[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
I
 NATURE OF THE PROCEEDING
This dispute arises out of the renovation and upgrading of the facilities at Union Station in New Haven. The project involved re-aligning tracks, re-building the passenger platforms, new access tunnels to the platforms and miscellaneous demolition and modification of existing facilities.
The plaintiff (hereinafter River Dock) was a sub-contractor of the defendant (O G) and in 1983 contracted to construct CT Page 6918 cofferdams at Platforms A D and the passageway or tunnel servicing them.
As a result of a dispute between the parties, the plaintiff brought suit against the defendant in 1986 and after a jury trial, a verdict issued on January 29, 1990 in favor of the plaintiff on the complaint and of defendant on its counterclaim. The defendant appealed and the matter was transferred to the Supreme Court which released its decision on July 30, 1991. In that decision, the Court reversed the trial court for the improper admission of a document under the business records exception in § 52-180 and ordered a new trial.[1] The Court also stated that since the plaintiff did not file a cross appeal, it would not address the plaintiff's arguments as to the defendant's counterclaim thus leaving intact the jury verdict in favor of the defendant.
After the remand, the case was ordered stricken from the jury docket. A court trial was commenced but a mistrial declared after six days.
This trial proceeded over most of nine days in the course of which more than 200 exhibits were marked.
 II THE ISSUES
The plaintiff's claims at trial were:
1. A claim for "anticipated profits" for the work it did not perform;
2. Damages for a delay in the commencement of the project on the work it did perform;
3. Compensation based on the value of the work it performed under the contract.
 III ANTICIPATED PROFITS
As noted above, in the prior trial, the jury found for the defendant on its counterclaim and awarded $6,500.00 in damages. The pertinent language of the counterclaim is paragraph 7 wherein CT Page 6919 the defendant alleges:
 "River Dock Pile, Inc. breached its contract with the Defendant by failing to comply with the safety practices commonly used in the construction industry, by failing to comply with the requirements of the contract documents for work and materials furnished and by failing to properly man the job."
No interrogatories were submitted to the jury so that its verdict on the counterclaim, and basically the above paragraph 7, is in effect a general verdict. Whether based on one, two or all three of the alleged breaches, the verdict is an enunciation by the jury of its conclusion that the plaintiff breached its contract with the defendant.
The defendant having prevailed on this issue in the prior trial, the plaintiff cannot re-litigate the issue again in this proceeding. Scalzo v. City of Danbury, 224 Conn. 124, 128 (1992).
The plaintiff would have the Court award damages for its lost profits in the face of a jury verdict that found the plaintiff in breach of its contract and in which damages were awarded to the defendant.
There are further weaknesses in the plaintiff's profits claim. It was first testified by Mr. Beer, then the plaintiff's general manager, that profit and overhead were "built into" the contract bid. He computed this to be $76,372.00. He later revised this figure downward to $68,948.00, referring to a profit rate of 25%.
However, the recitation, documentation and computation of these amounts is unconvincing to say the least. River Dock's record keeping, accounting methods and operational style appear to have developed in an "ad hoc" basis with a dearth of recorded detail and vital information. The defendant has addressed some of these inconsistencies and inaccuracies in pages 30-34 of its brief.
The plaintiff also argues that the defendant kept it off the job site after the boom on the plaintiff's crane fell onto the overhead wires and platform shed. The evidence produced at trial on this issue is a letter from the railroad stating that River Dock should be barred from operating equipment on the site (Exhibit 3 
W). This accident occurred on April 17, 1985, but the plaintiff CT Page 6920 was notified of the railroads action shortly after O G received the railroad letter on May 31, 1985.
The plaintiff ceased working on April 17 and never returned to the job site, though the work left for it to do did not involve the use of heavy equipment. While River Dock in its brief claims to have been prevented form continuing to work by O G, it failed to produce any writing in which it demanded to return to work, protested the decision of the railroad, or responded to the numerous requests, written and oral, form O G to return to the job site. (See Exhibits 14, 43, 44, 45, L).
The Court finds no legal or factual basis to support the plaintiff's claim for anticipatory profits, nor does it find that the defendant prevented the plaintiff from returning to the site and performing other work.
 IV DELAY CLAIM
The plaintiff revised its claim downward to $14,438.20 from its original submission. This claim allegedly arose because the New Haven Parking Authority (NHPA), the agency acting for the City of New Haven, occasioned a delay in the start-up of the job and in this delay period wages rose so that the plaintiff had to pay more then it contemplated when it bid.
The plaintiff's proof of this loss was vague and lacked the specificity required to sustain its burden of proof. The Court was not presented with evidence of how the claim arose, when it arose, and what substantiated it. The Court was offered evidence of the difference in wage rates between 1984 and 1985 (Exhibits EE and I), but there was insufficient evidence to enable it to make a finding as to the claim itself.
In its post trial brief, the plaintiff argues that the defendant actually received the amount of its claim from the NHPA and has refused to pay it to the plaintiff. However, there is no evidence to show that to be the case.
The plaintiff offered the testimony of the present and two former directors of the NHPA. No one of them shed any light on the status of the plaintiff's claim. Thus, the Court heard no evidence as to whether it was allowed, if so in what amount and to whom any CT Page 6921 payment was made.
The Court does not find, as urged by the plaintiff, that Exhibit X is an acknowledgement by the defendant that it received the plaintiff's claim proceeds. It appears to be a final settlement statement of all amounts "due to O G and its subcontractors. . .", but it would still require the plaintiff to prove its claim, its approval by the NHPA, and the receipt of the funds by the defendant.
To apply the "coup de grace" to this argument, there is the unrefuted testimony of Maurice Hoben, an officer of the defendant corporation. He stated the plaintiff never showed up at the hearing scheduled by the NHPA to evaluate this claim. He also stated the defendant received no money on account of this claim from the NHPA.
The plaintiff's claim for damages for any delay in commencing work is denied.
 V VALUE OF WORK PERFORMED
There is no disagreement as to the actual work performed by the plaintiff prior to the accident of April 17, 1985, but the value of that work is hotly disputed.
Simeon Beer testified for the plaintiff that at the time of the accident, 70% of the extra work contracted for had been completed and that with prior retainages due the plaintiff, there was a balance due from the defendant of $72,062.00. At this point, the plaintiff had received payments totalling $187,886.00.
The defendant argued that the plaintiff had "front loaded" the billing process, requisitioning heavily in the early going, so that there was comparatively little money left to finish the project. It was the defendant's position that the plaintiff had been overpaid some $30,000.00, based on figures utilized by River Dock itself.
While Mr. Beer relied on and the plaintiff's brief stresses the proposed payment schedule to support the plaintiff's computation, the defendant utilizes the plaintiff's own figures to show the overpayment. CT Page 6922
Thus, the percentage of the pile work actually completed was 37.2% of the total River Dock estimate of $304,170.00 or $113,151.00. Added to this is the contract price for the cofferdam at "D", $41,750.00, and $6,120.00 for survey cost and the premium for working under the catenary wires, for a total of work done of $161,021.00, about $26,000.00 less than the payments made to the plaintiff. It should be noted that Mr. Beer was questioned about the percentage computation and did not disagree with it.
The defendant has offered two other computations, one utilizing exhibits and figures in evidence but factoring in the square footage of the Platform D (completed by the plaintiff) and Platform A, still to be done on April 17, 1985. This computation would place the value of the work done at $157,160.00.
A percentage approach, based on the 37% of pile work done by the plaintiff plus the cofferdam expense at Platform D yields a "value" of $156,450.00. Mr. Beer did not dispute the use of 37% as representing the portion of pile driving performed by the plaintiff.
The plaintiff did not really respond to the defendant's evaluation computations, but relied on the requisitions submitted, arguing that this requisition schedule was binding on the defendant since it agreed to this schedule and made several payments in accordance with it.
This premise ignores the simple fact that this was a lump sum contract and the plaintiff did not complete the work called for in the contract. As noted above, it has been previously determined that River Dock breached its contract. That being the case, it is only entitled to value of the work it performed. That would be the case even if the defendant had in error paid the balance of the contract price.
The plaintiff has simply not sustained its burden of proof on its claim that it is entitled to $78,195.00. Mr. Beer testified that he and Mr. Brennan agreed that 70% of the extra work had been done. Mr. Brennan denied this and his computations have been discussed above. The plaintiff has not offered evidence to sustain this claim, save for its theory that the defendant is bound by the requisition schedule.
VI
CT Page 6923
CONCLUSION
The plaintiff commenced this trial with an adverse verdict against it that it had breached the contract in question. It has failed to prove its alleged value for the work it performed. It neglected to return to the job site despite requests from the defendant to do so, and in fact voluntarily absented itself. It neglected to appear to press its claim for damages due to delay in the project commencement.
Judgment is entered for the defendant.
Anthony V. DeMayo State Trial Referee